Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Michael J. Ellis
Timothy J. Ohms
Assistant United States Attorneys
Post Office Box 1494
Spokane, Washington 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SAMANTHA MARIE TAINEWASHER,<br><br>Defendant. | Case No. 1:21-CR-02029-SAB<br><br>GOVERNMENT'S RESPONSE TO MOTION TO DISMISS |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Michael J. Ellis and Timothy J. Ohms, Assistant United States Attorneys, hereby submits the following response to the Defendant's Motion to Dismiss, ECF No. 56.

**I.    Involuntary manslaughter and the Indictment**

Manslaughter concerns the "unlawful killing of a human being without malice." 18 U.S.C. § 1112(a). A defendant commits *involuntary* manslaughter when the death occurs "[i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." *See id.* The Ninth Circuit has "provide[d] a gloss on the statutory text" through significant developments in case law. *See United States v. Garcia*, 729 F.3d 1171, 1175 (9th Cir. 2013). Specifically, "involuntary

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS - 1

manslaughter requires proof beyond a reasonable doubt that the defendant acted with gross negligence," or the "wanton or reckless disregard for human life." *See Garcia*, 729 F.3d at 1175 (quoting *United States v. Keith*, 605 F.2d 462, 463 (9th Cir. 1979)). Further, the defendant must have "had actual knowledge that his conduct was a threat to the lives of others, . . . or had knowledge of such circumstances as could reasonably be said to have made foreseeable to him the peril to which his acts might subject others." *See id.*

The Ninth Circuit model jury instruction sets out both the statutory and extra-statutory elements:

First, the defendant committed an act that might produce death;

Second, the defendant acted with gross negligence, defined as wanton or reckless disregard for human life;

Third, the defendant's act was the proximate cause of the death of the victim. A proximate cause is one that played a substantial part in bringing about the death, so that the death was the direct result or a reasonably probable consequence of the defendant's act;

Fourth, the killing was unlawful;

Fifth, the defendant either knew that such an act was a threat to the lives of others or knew of circumstances that would reasonably cause the defendant to foresee that such an act might be a threat to the lives of others; and

Sixth, the killing occurred at [a specific place of federal jurisdiction].
Ninth Circuit Model Criminal Jury Instructions 16.4; *see also* ECF No. 54 at 2–3.

The Indictment recites the above elements while adding the specific allegation that "the Defendant allowed S.R., a minor child, to be in an area the Defendant knew to contain blue pills the Defendant believed to consist of Fentanyl." *See* ECF No. 1. The Government's theory of culpability is exactly that – the Defendant, with knowledge that her trailer contained Fentanyl-laced pills, allowed her toddler, S.R.,

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS - 2

unsupervised free rein of the trailer, leading to S.R.'s death from a Fentanyl overdose.[1]

### II. As the Indictment sufficiently informs the Defendant of the allegations against her and would allow her, in a hypothetical future prosecution, to plead double jeopardy, the Indictment satisfies the constitutional requirements.

"An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982). The indictment serves the additional purposes of ensuring "that the defendants are being prosecuted on the basis of the facts presented to the grand jury" and "to allow the court to determine the sufficiency of the indictment." *See id.*; *see also United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986). "The Government need not allege its theory of the case or supporting evidence, but only the 'essential facts necessary to apprise a defendant of the crime charged.'" *See Buckley*, 689 F.2d at 897 (quoting *United States v. Markee*, 425 F.2d 1043, 1047–48 (9th Cir. 1970)). "[A]n indictment should be: (1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." *See id.* at 899.

### A. As the charged crime involves the death of a specific person – S.R. – the Defendant will be adequately enabled to plead double jeopardy against a hypothetical future prosecution.

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" *Illinois v. Vitale*, 447 U.S. 410, 415 (1980). The "constitutional prohibition of double jeopardy has been held to consist of" separate guarantees, to include "against a second

---

[1] The Defendant argues that she cannot be convicted of involuntary manslaughter if she "herself was in possession of fentanyl." *See* ECF No. 56 at 6. It is unclear how the Defendant draws this conclusion – simple possession of a controlled substance is a Class A Misdemeanor and therefore "an unlawful act not amounting to a felony." *See* 21 U.S.C. § 844; 18 U.S.C. § 1112(a).

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS - 3

prosecution for the same offense after acquittal" and "a second prosecution for the same offense after conviction." *See id.*

Here, the Indictment alleges that the Defendant, within a defined period of time ("Between on or about March 27, 2020, and on or about March 29, 2020"), in a defined location ("the Eastern District of Washington, within the external boundaries of the Yakama Nation Indian Reservation"), committed an act which caused the death of a specified person ("S.R."). *See* ECF No. 1. The Indictment accordingly provides the Defendant sufficient grounds to plead double jeopardy during a hypothetical subsequent prosecution – should the Defendant again be charged with causing S.R.'s death on the Yakama Reservation in late March 2020, she will simply have to point to the Indictment to demonstrate that such a future prosecution is precluded. *See Russell v. United States*, 369 U.S. 749, 764 (1962) (noting that "[s]ince the indictments set out not only the times and places of the hearings at which the petitioners refused to testify, but also specified the precise questions which they then and there refused to answer, it can hardly be doubted that the petitioners would be fully protected from again being put in jeopardy for the same offense").

**B. The Defendant's concern regarding the Indictment's use of the word "area" is baseless and contravenes common sense.**

The Defendant argues that "[c]rucially, the indictment does not articulate the 'area' that contains the blue pills," and goes on to question whether the "area" is the "Yakama Indian Reservation," the Defendant's "trailer," or Calvin Hunt's "pockets." *See* ECF No. 56 at 5. Mindful that an indictment should be "construed according to common sense," *see Buckley*, 689 F.2d at 899, the Court should reject the Defendant's specificity argument as the Indictment clearly refers to the Defendant's trailer. The Indictment alleges that "the Defendant allowed S.R., a minor child, to be in an area the Defendant knew to contain blue pills the Defendant believed to consist of Fentanyl." *See* ECF No. 1. S.R. overdosed on Fentanyl inside the Defendant's trailer, both other relevant parties (the Defendant and Hunt) were present inside the

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS - 4

Defendant's trailer when S.R. overdosed, and the Defendant has admitted that she knew Fentanyl-laced pills were present inside the trailer at the time. When read through the lens of "common sense," the Indictment provides the Defendant the ability to "prepare [her] defense" and ensures her "that [she] is being prosecuted on the basis of facts presented to the grand jury." *See Jenkins*, 785 F.2d at 1392.

### C. The Defendant cannot manufacture a specificity issue by attempting to inject additional elements part of neither the charged offense nor the Government's theory underlying the Defendant's grossly negligent behavior.

As noted above, the Government's theory of the case is straightforward – the Defendant, S.R.'s mother, allowed S.R. to be inside the Defendant's trailer without adequate supervision despite knowing that a deadly controlled substance – Fentanyl-laced blue pills – was present inside the trailer. This theory tracks the language of the Indictment – "the Defendant allowed S.R., a minor child, to be in an area the Defendant knew to contain blue pills the Defendant believed to consist of Fentanyl." *See* ECF No. 1. The Indictment therefore provides the Defendant sufficient facts to understand the charge and the means by which the Government alleges she committed involuntary manslaughter. *Contra Russell*, 369 U.S. at 766 (disallowed "[a] cryptic form of indictment [that] requires the defendant to go to trial with the chief issue undefined").

The Defendant makes a number of assertions regarding what the Government might have to prove: whether the Defendant or Hunt controlled the Fentanyl pills, whether the Defendant or Hunt directly provided the Fentanyl pills to S.R., the exact mechanism by which S.R. accessed and ingested the Fentanyl. *See* ECF No. 56 at 5–6, 8. The Government does not have to prove any of the above – the Government must prove, as alleged in the Indictment, that the Defendant acted "with gross negligence" by "allow[ing] S.R., a minor child, to be in an area the Defendant knew to contain blue pills the Defendant believed to consist of Fentanyl." *See* ECF No. 1. As alleged in the Indictment, it does not matter who controlled the Fentanyl pills or how S.R.

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS - 5

ultimately ingested the substance. What matters is that the Defendant knew the pills were in the trailer and allowed S.R. – a toddler – free rein to wander. The Indictment sufficiently informs the Defendant of that allegation.

Similarly, the Defendant's concern that the Defendant is accused of "failing to act" is meritless. *See* ECF No. 56 at 9. The essence of the Government's case is that the Defendant, with knowledge that a dangerous substance was present in her trailer, neglected to care for S.R. by allowing him in the trailer without adequate supervision and S.R. died as a result. Homicides resulting from circumstances akin to child neglect have previously been upheld as involuntary manslaughter. *See United States v. Bald Eagle*, 849 F.2d 361, 363 (8th Cir. 1988) (affirming convictions for involuntary manslaughter where the defendant's five children died from smoke inhalation during a fire and finding the defendant culpable by "voluntarily disabling himself from providing care for his children, or negating his knowledge of or the foreseeability of the peril to which he was exposing the lives of his offspring whom it was his duty to protect from danger").

The Defendant also argues that Hunt potentially purposefully providing Fentanyl to S.R. "would break the chain of causation" necessary to find that the Defendant could reasonably foresee that S.R.'s life was at risk.[2] *See* ECF No. 56 at 6. Not so – per the Indictment and the Government's theory of the case, it is a reasonably foreseeable consequence of allowing a toddler loose inside a trailer that the parent knows to contain Fentanyl-laced pills that the toddler might ingest a pill and, being a vulnerable child without the full biological resources of an adult, overdose.[3] The

---

[2] The Government notes that, as far as the Government is aware, there is no evidence that Hunt purposefully provided Fentanyl to S.R.

[3] The Government notes that, as the Court is aware, Fentanyl is often deadly in adults. As discussed in the Government's response to the Defendant's First Motion *in Limine*, the Government is prepared to present expert testimony that "a small amount of fentanyl is even more potent in pediatric patients who are opioid-naïve." *See* ECF No. 43 (Exhibit 1 at 16–17).

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS - 6

Defendant is free to put her arguments concerning foreseeability and parental responsibilities to the jury – the arguments do not however undermine the Indictment and the language advising the Defendant of the allegations against her.

Overall, the Indictment sufficiently advises the Defendant of the allegation – that she "allowed S.R., a minor child, to be in an area the Defendant knew to contain blue pills the Defendant believed to consist of Fentanyl." *See* ECF No. 1. "[C]onstrued according to common sense," *see Buckley*, 689 F.2d at 899, the Indictment provides the Defendant the ability to "prepare [her] defense." *See Jenkins*, 785 F.2d at 1392. The Defendant's attempt to dismiss the Indictment based on a lack of specificity should accordingly be rejected.

### D. The cases cited by the Defendant do not support her argument as each addresses a separate indictment-premises challenge – the failure of an indictment to allege each essential element of the crime charged.

The Defendant cites *United States v. Opsta*, 659 F.2d 848 (8th Cir. 1981), *United States v. Daniels*, 973 F.2d 272 (4th Cir. 1992), and *United States v. Rojo*, 727 F.2d 1415 (9th Cir. 1983), as support for her argument that "omissions open the risk that the grand jury failed to consider and find all of the elements of the crime." *See* ECF No. 56 at 9. In *Opsta*, the indictment entirely omitted "gross negligence" and "actual knowledge" – two essential elements of involuntary manslaughter. *See Opsta*, 659 F.2d at 850. Similarly in *Daniels*, the indictment failed to allege that the firearm transfer was in violation of the provisions of Title 26, Chapter 53 – an essential element of transferring a firearm in violation of 26 U.S.C. § 5812(a). *Daniels*, 973 F.2d at 274–75. And in *Rojo*, the petty offense citation contained only the statutory provision "Title 18, Section 641" and did not include "even a cursory reference to any act allegedly committed or to any other facts, such as date, time, or location." *See Rojo*, 727 F.2d at 1418.

The Defendant is correct about the impact of the indictment errors in *Opsta* and *Daniels* – by failing to include one or more essential elements, there was a risk that

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS - 7

the grand jury returned an indictment without finding all of the elements of the offense.[4] *See* ECF No. 56 at 9. But the Defendant has not alleged that the Indictment fails to include an essential element of involuntary manslaughter, nor could she given that the Indictment tracks the model jury instruction. *See* ECF No. 1. The Defendant has conceded the inapplicability of an "essential element" challenge. *See* ECF No. 56 at 8 (implicitly conceding that the Indictment contains the essential elements of involuntary manslaughter).[5] As such, the cited cases concern an entirely separate and distinct indictment challenge, and are irrelevant to the Defendant's Motion challenging the Indictment on specificity grounds.

## CONCLUSION

The Indictment satisfies the constitutional requirements – the charging document is sufficiently specific to both protect the Defendant from potential re-prosecution in violation of the Double Jeopardy Clause and enable her to prepare a defense. The Defendant's arguments to the contrary either (1) defy common sense; (2) concern an irrelevant and separate challenge to indictments which fail to allege an essential element of the crime charged; or (3) improperly mix the Defendant's arguments concerning the merits of the charge with the question before the Court – whether the Indictment is sufficiently detailed to allow the Defendant to prepare a defense. Accordingly, as the Indictment includes the essential elements of involuntary

//

---

[4] *Rojo* is, of course, irrelevant to the Defendant's argument as no grand jury indictment is returned when a petty offense is charged by citation.

[5] The Defendant then confusingly reverses course, highlighting that "[r]elevant case law has held that gross negligence and actual knowledge of potential harm were additional elements of the offense" and that "[t]he absence of such allegations in the indictment was not cured by the government's proof at trial of these elements or their inclusion in the court's instructions to the jury." *See* ECF No. 56 at 8–9. Given the Defendant's concession that the Indictment contains the essential elements of involuntary manslaughter, *see id.* at 8, and the Indictment's express allegation of both gross negligence and actual knowledge, *see* ECF No. 1, it is unclear how these statements further the Defendant's argument.

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS - 8

manslaughter and alerts the Defendant to the Government's theory underlying her "gross negligence," the Court should deny the Defendant's Motion.

Dated: April 6, 2022.

        Vanessa R. Waldref
        United States Attorney

        *s/Michael J. Ellis*
        Michael J. Ellis
        Assistant United States Attorney

        *s/Timothy J. Ohms*
        Timothy J. Ohms
        Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Richard A. Smith; Douglas E. McKinley, Jr.

*s/ Michael J. Ellis*
Michael J. Ellis
Assistant United States Attorney

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS - 10