Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Michael J. Ellis
Timothy J. Ohms
Assistant United States Attorneys
Post Office Box 1494
Spokane, Washington 99210-1494
Telephone: (509) 353-2767

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:21-CR-02029-SAB |
| Plaintiff, | |
| v. | GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE JEOPARDY |
| SAMANTHA MARIE TAINEWASHER, | |
| Defendant. | |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Michael J. Ellis and Timothy J. Ohms, Assistant United States Attorneys, hereby submits the following response to the Defendant's Motion to Dismiss re Double Jeopardy, ECF No. 182.

### BACKGROUND

The Defendant proceeded to trial on August 29, 2022. *See* ECF No. 151. During the Defendant's case-in-chief, Calvin Hunt – an individual on the Defendant's witness list – appeared and indicated through counsel that he intended to invoke his privilege against self-incrimination. Transcript, Trial Day 4, September 1, 2022, at 26. After a lengthy back-and-forth between the Court, the Government, and counsel for the Defendant, the Court declared a mistrial with the Defendant's consent. *See id.* at 54–55. The Defendant now raises a series of arguments attempting the bar a second trial,

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE JEOPARDY - 1

premised on the Court's supervisory powers, the Double Jeopardy Clause, and the notion that a retrial would be futile. *See* ECF No. 182.

## DISCUSSION

### I.    The mistrial was not supported by sufficient bases.

During discussions with counsel and when ruling, the Court noted four primary reasons underlying the mistrial – (1) the Government's introduction of hearsay statements from Hunt; (2) the impact of the introduction of Hunt's statements on the Defendant's rights pursuant to the Confrontation Clause; (3) the inability of the Defendant to impeach Hunt through his prior statements to Federal Bureau of Investigation Special Agent Eric Christensen; and (4) the unfairness to the Defendant arising from her inability to call Hunt as a witness following his invocation of his Fifth Amendment privilege against self-incrimination. *See* Transcript, Trial Day 4, September 1, 2022, at 46–48. These rationales – either individually or in concert – do not support having terminated the trial and, even if the Court disagrees, do not bar a second trial.

The Government notes that, as the Defendant agreed to the mistrial, the mistrial's insufficient support does not itself give rise to any remedy for the Defendant. *See* Transcript, Trial Day 4, September 1, 2022, at 54 (counsel for the Defendant noting that "[w]e would not object" to the mistrial); *see also Oregon v. Kennedy*, 456 U.S. 667, 672 (1982) (noting that, barring one exception, double jeopardy does not bar retrial where a mistrial is declared at the defendant's behest).

### A. Hunt's statements to Officer Chumley were excluded from the rule against hearsay and alternatively, the Defendant invited any error concerning the introduction of Hunt's statements.

On June 2, 2022, the Defendant filed a Notice Pursuant to Federal Rule of Evidence 807 indicating that the Defendant intended to offer statements made by Hunt to Officer Elijah Chumley with the Yakama Nation Tribal Police Department. *See* ECF No. 104, 104-3. The Government never filed an objection to the Notice. The

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE JEOPARDY - 2

Defendant never withdrew or otherwise indicated that the Defendant was forgoing future reliance on the Notice.

On August 29, 2022, in response to questions by the Court during the final pretrial conference, the Government referenced Hunt's statements to Officer Chumley and noted that the Government intended to introduce those statements on direct examination. Counsel for the Defendant did not object.

On August 30, 2022, counsel for the Defendant presented opening statement and referenced Hunt's comments to Deputy Chumley, *i.e.*, that Hunt had provided S.R. with milk during the nap which preceded S.R.'s death.

Officer Chumley testified on August 30, 2022. Prior to Officer Chumley's testimony, the Government *again* put on the record its intent to introduce Hunt's statements on direct examination. Counsel for the Defendant *again* did not object. *See* ECF No. 153 at 1. During direct examination, the Government asked Officer Chumley to relay what Hunt had told him concerning S.R.'s condition. Transcript, Trial Testimony of Elijah Chumley, August 30, 2022, at 14. Officer Chumley testified as anticipated in the Defendant's Rule 807 Notice – that Hunt stated that while napping S.R. woke up, came to Hunt, Hunt got S.R. some milk, and S.R. then returned to bed with the Defendant. *See id.* Counsel for the Defendant did not object. *See id.*

When discussing the rationale underlying the mistrial, the Court noted that "[t]he government relied upon [Hunt's] statements during its case in chief. Officer Chumley was specifically asked what did Mr. Hunt say, and he told the jury what Mr. Hunt said." Transcript, Trial Day 4, September 1, 2022, at 46–47.

Under Federal Rule of Evidence 803(4), statement that "is made for – and is reasonably pertinent to – medical diagnosis or treatment" is exempted from the rule against hearsay. *See* Fed. R. Evid. 803(4)(A). "The plain language of the Rule does not limit its application to patient-declarants." *See United States v. Yazzie*, 59 F.3d 807, 813 (9th Cir. 1995). At the time Hunt made the referenced statements concerning S.R.'s activities prior to being found unresponsive, S.R. was actively undergoing a

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE JEOPARDY - 3

medical emergency outside the Defendant's trailer. Aid was being rendered and Officer Chumley was trying to figure out what had happened. S.R.'s activities immediately before being found unresponsive – exactly the focus of Hunt's comments – were clearly relevant to Officer Chumley's efforts. Hunt's statements to Officer Chumley regarding S.R. were accordingly exempted from the rule against hearsay.

Should the Court disagree, "[t]he doctrine of invited error prevents a defendant from complaining of an error that was his own fault." *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1187 (9th Cir. 1992). "For the purposes of the invited error doctrine, a defendant invites error when he 'induce[s] or cause[s] the error.'" *United States v. Magdaleno*, 43 F.4th 1215, 1220 (9th Cir. 2022) (quoting *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997)). Here, the Defendant submitted that the Defendant intended to introduce Hunt's statements to Officer Chumley. The Defendant neither withdrew the Notice nor objected when the Government indicated on multiple occasions that the Government intended to introduce Hunt's statements through Officer Chumley nor objected when those statements were elicited during Officer Chumley's direct examination. As such, the Defendant – having originally indicated an intent to offer Hunt's statements and failed to object when given numerous opportunities – invited any error and cannot now complain that the Defendant was prejudiced by the introduction of Hunt's statements. The introduction of those statements was an insufficient basis upon which to grant the mistrial.[1]

### B. The introduction of Hunt's statements to Officer Chumley did not implicate the Confrontation Clause.

The Court noted that, through the introduction of Hunt's statements to Officer Chumley, "I think that there are confrontation clause issues that impact the defendant's rights." Transcript, Trial Day 4, September 1, 2022, 47. Not so –

---

[1] Similarly, the Court could readily find that the Defendant waived any objection to the hearsay statements, given the repeated failure to object when given ample notice of the Government's intended line of inquiry.

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE JEOPARDY - 4

1   "[s]tatements are nontestimonial when made in the course of police interrogation

2   under circumstances objectively indicating that the primary purpose of the

3   interrogation is to enable police assistance to meet an ongoing emergency." *Davis v.*

4   *Washington*, 547 U.S. 813, 822 (2006). By contrast, statements are "testimonial when

5   the circumstances objectively indicate that there is no such ongoing emergency, and

6   that the primary purpose of the interrogation is to establish or prove past events

7   potentially relevant to later criminal prosecution." *See id.* "In the end, the question is

8   whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of

9   the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio*

10  *v. Clark*, 576 U.S. 237, 245 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358

11  (2011)).

12      Here, the Court has previously determined that Officer Chumley's entry into the

13  trailer during his initial response to the property was supported by the emergency

14  exception to the warrant requirement. *See* Transcript, Motion Hearing, July 26, 2022,

15  at 153. There was indisputably an ongoing emergency where S.R. was unresponsive

16  and Officer Chumley was attempting to determine what had happened. When directly

17  asked by the Court "[w]hen you left after the first visit, did you consider that trailer to

18  be a crime scene," Officer Chumley answered "No." *See id.* at 72. As such, Hunt's

19  statements to Officer Chumley cannot be construed as part of an interrogation

20  designed to "create an out-of-court substitute for trial testimony" – at the time the

21  statements were made, Officer Chumley did not consider the trailer a crime scene and

22  was not conducting a criminal investigation. He was instead attempting to gather

23  information to help S.R., who was unresponsive and clearly in the midst of an

24  "ongoing emergency." Accordingly, as Hunt's statements were not "testimonial," the

25  Defendant did not have a right under the Confrontation Clause to cross-examine Hunt

26  concerning those statements. The nonexistent right to confront Hunt concerning

27  Hunt's statements to Officer Chumley was an insufficient basis upon which to grant

28  the mistrial.

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE
JEOPARDY - 5

1

**C. The Defendant could have impeached Hunt through SA Christensen.**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

One of the Defendant's chief complaints was that the Defendant was not "able to introduce [Hunt's] false statements" to SA Christensen. Transcript, Trial Day 4, September 1, 2022, at 43–44. Counsel for the Defendant claimed that SA Christensen was not asked about Hunt's statements as "I think it was hearsay." *See id.* at 44. Not so – as Hunt's statements, through Officer Chumley and Hunt's Facebook account, were already in evidence, the Defendant was free to impeach Hunt through Federal Rule of Evidence 806. Under Rule 806, "[w]hen a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806. As "a declarant's prior inconsistent statement is not offered for its truth, it is not hearsay." *United States v. Bao*, 189 F.3d 860, 866 (9th Cir. 1999). This makes sense – a false statement introduced to impeach a declarant cannot be "hearsay" as the statement is offered for its falsity, the opposite of a statement offered "to prove the truth of the matter asserted in the statement." *See* Fed. R. Evid. 801(c)(2). The Defendant's asserted inability to impeach Hunt with Hunt's false statements to SA Christensen was an insufficient basis upon which to grant the mistrial – the Defendant simply waived the opportunity to inquire about Hunt's false statements during cross-examination.

20

21

**D. The Defendant's other invoked lines of inquiry concerning Hunt were already in evidence.**

22

23

24

25

26

27

28

The Defendant listed, as an offer of proof, the following lines of inquiry should Hunt testify: (1) testimony confirming that Hunt was in the Defendant's trailer from March 27 through March 29; (2) testimony confirming that Hunt was the last person to interact with S.R. before S.R.'s death; and (3) testimony confirming that Hunt lied to SA Christensen concerning his possession of fentanyl pills immediately before S.R.'s death. Transcript, Trial Day 4, September 1, 2022, at 25. When asked "[i]s that it?," counsel for the Defendant responded "[g]enerally." *See id.*

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE JEOPARDY - 6

All of the above was already in evidence or a topic counsel for the Defendant could have addressed on cross-examination of the Government's witnesses. Hunt's statements to Officer Chumley concerning his activities at the Defendant's trailer on the morning of March 29, 2022, were before the jury. Transcript, Trial Testimony of Elijah Chumley, August 30, 2022, at 14. Hunt's Facebook messages attempting to solicit buyers for pills were before the jury. *See* Exhibits 75, 76, 77. The communications between Hunt and the Defendant discussing Hunt's arrival at the Defendant's trailer on March 27, 2020, were before the jury. *See* Exhibit 74. As noted above, counsel for the Defendant could have cross-examined SA Christensen about Hunt's false statements but failed to do so. Accordingly, counsel for the Defendant's inability to conduct the proposed direct examination of Hunt did not present a sufficient basis upon which to grant the mistrial.

**E. The Defendant does not have an unfettered right to call witnesses in her defense.**

"While the right to call witnesses on behalf of the defense is well established, the Supreme Court has indicated that the right is not without limitation . . . ." *Arredondo v. Ortiz*, 365 F.3d 778, 783 (9th Cir. 2004). "There are a number of exemptions from the testimonial duty, the most important of which is the Fifth Amendment privilege against compulsory self-incrimination." *Kastigar v. United States*, 406 U.S. 441, 444 (1972). The "Sixth Amendment right of an accused to compulsory process to secure the attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege. Nor is an accused entitled to compel a prosecutor to grant immunity to a potential defense witness to get him to testify." *United States v. Paris*, 827 F.2d 395, 399 (9th Cir. 1987) (quoting *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978)).

"The Fifth Amendment does not create a general right for a defendant to demand use immunity for a co-defendant, and the courts must be extremely hesitant to intrude on the Executive's discretion to decide whom to prosecute." *United States v.*

*Straub*, 538 F.3d 1147, 1166 (9th Cir. 2008). While "[u]nder certain circumstances, due process may require a court to compel the prosecution to grant, at least, *use* immunity" such action is required "only when the defense established that the testimony would be relevant and that (a) the prosecution intentionally caused the defense witness to invoke the Fifth Amendment right against self-incrimination with the purpose of distorting the fact-finding process." *See United States v. Moalin*, 973 F.3d 977, 1004 (9th Cir. 2020) (quoting *Straub*, 538 F.3d at 1162).[2]

The Government does not dispute that – given the low evidentiary threshold – Hunt's testimony would have been relevant. However, as noted during the trial, the Government did not intentionally cause Hunt to invoke the Fifth Amendment. The analysis turns on whether "the prosecution took affirmative steps to prevent" the witness from testifying, such as intimidation or harassment. *See Williams v. Woodford*, 384 F.3d 567, 601 (9th Cir. 2004). Simply not charging Hunt while evaluating the evidence against him cannot rise to the level of intimidation or harassment necessary to compel use immunity. In fact, the Government took affirmative steps to provide an opportunity for Hunt to testify by proposing that Hunt first participate in an immunized "free talk" with the FBI case agent; an offer Hunt rejected. *See* Transcript, Trial Day 4, September 1, 2022, at 52.

The Government does concede, as noted by the Defendant, that the Government was incorrect when opining that a perjury charge would be legally barred should Hunt be granted immunity.[3] While the Government apologizes for the inaccurate response,

---

[2] A second rationale – that the prosecution selectively granted immunity to government witnesses while denying the same to witnesses for the defense – is not relevant here.

[3] While not an excuse for the Government's inaccurate assessment of the law, both parties were proceeding under similar misinformation as counsel for the Defendant had earlier advised the Court that, in his opinion, the Government would not "be able to prosecute" Hunt should immunity be granted. Transcript, Trial Day 4, September 1, 2022, at 29.

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE JEOPARDY - 8

the hypothetical *legal* ability to prosecute Hunt for any potential perjury does not undermine the Government's rationale behind declining to grant use immunity. Even if *legally* possible, the Court must acknowledge the *practical* limitations of prosecuting an individual for perjury when the hypothetically perjured account concerns events during which the other two persons present were either asleep or are now deceased. Where a perjury prosecution requires "the testimony of two witnesses, or the testimony of one witness, plus other corroborative evidence," *see United States v. Brandyberry*, 438 F.2d 226, 227 (9th Cir. 1971), the prospect of prosecuting Hunt for any perjured testimony would be a tall – nigh impossible – order. Even with the hypothetical prospect of a perjury prosecution, the Government's rationale remains the same – under the circumstances, granting use immunity to Hunt risked distorting the truth-finding process.

In sum, the Defendant did not enjoy an unfettered constitutional right to call Hunt as a witness. The Defendant did not enjoy a constitutional right to compel Hunt to testify over his invocation of his Fifth Amendment privilege against self-incrimination. The Defendant – given the utter lack of any indication that the Government harassed or intimidated Hunt into invoking his privilege – did not enjoy the right to ask the Court to compel the Government to grant immunity. The Defendant's inability to call Hunt as a witness due to his Fifth Amendment invocation was an insufficient basis upon which to grant the mistrial.

**F. The mistrial was not supported by legally sufficient bases.**

The Defendant invited Hunt's statements into evidence and did not enjoy the right to confront Hunt concerning those statements. The Defendant failed to seize her opportunity to impeach Hunt with his prior false statements. And the Defendant – given Hunt's Fifth Amendment invocation – did not enjoy the right to compel him to testify. As such, the mistrial was not supported by legally sufficiently bases and should not have been granted.

//

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE JEOPARDY - 9

**II.    Dismissal under the Court's supervisory authority is inappropriate.**

"Dismissal under the court's supervisory powers for prosecutorial misconduct requires (1) flagrant misbehavior and (2) substantial prejudice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993). Additionally, "[c]ourts may dismiss an indictment under their inherent supervisory powers '(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct.'" *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010) (quoting *United States v. Matta-Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995)). "While a court may dismiss a prosecution 'to preserve judicial integrity,' it does not under this rubric 'have the authority to supervise out-of-court executive procedure in the absence of a constitutional or statutory violation.'" *See id.* at 576 (internal citations omitted). "Moreover, to dismiss an indictment on this basis, a court must find that the prosecutorial misconduct was 'flagrant.'" *See id.* (internal citation omitted).

The Defendant has alleged that "[t]he Court should exercise its supervisory powers and dismiss the case because absent the testimony of Calvin Hunt, the trial was so fundamentally unfair to [the Defendant] that a conviction could not rest on appropriate considerations validly before the jury." *See* ECF No. 182 at 8. It is unclear how this allegation fits within the rubric described above – the Defendant has not alleged a "constitutional or statutory violation" and has not asserted that any alleged misconduct was "flagrant."

The Defendant instead alleges without evidence that "[i]t is . . . obvious that the government then delayed bringing charges against Calvin Hunt to avoid his testimony in the trial of [the Defendant]." *See id.* at 8–9.[4] The Government's rationale for not

---

[4] The Defendant also comments on the Defendant's prior status as a witness in a separate murder prosecution. *See* ECF No. 182 at 5–6. It is unclear how those

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE JEOPARDY - 10

charging Hunt prior to the first trial was valid – the Government did not believe the case was in the best posture to enable the Government to successfully prosecute Hunt for the most serious charges being considered. *See* Transcript, Trial Day 4, September 1, 2022, at 32. It is also unclear how charging Hunt would have changed his availability as a witness *vis a vis* the Defendant – unless Hunt had pleaded guilty and been sentenced he would remain just as unavailable as a witness to the Defendant as during the first trial.[5] Although the Government may be in the process of re-evaluating its position with the benefit of the Court's comments, that does not alter the legitimacy of the rationale previously offered by the Government.

Further, the Government did not know that Hunt would be unavailable to the Defendant as a witness. The Government did not call Hunt as a witness. The Government did not know before seeking the Indictment that the Defendant intended to call Hunt as a witness. The Government did not compel Hunt to invoke his privilege against self-incrimination or know in advance that he intended to do so. In fact, Hunt had previously waived his *Miranda* rights and participated in a lengthy interview with SA Christensen.

While the Government concedes that perjury is *legally* available as a remedy, the Government, as discussed above, does not believe the potential of a perjury charge to be a *practical* remedy in this matter. As such, the Government stands by the position placed on the record at trial. Overall, the Defendant has to demonstrate "flagrant" prosecutorial misconduct while, at most, the Defendant has shown that the Government misstated the law in a manner that would not have changed the Government's position regarding immunity.

---

comments impact the Defendant's arguments concerning the Court's supervisory powers.

[5] Ultimately the argument is circular: if the Defendant and Hunt demand each other as witnesses at trial but invoke their privilege against self-incrimination, neither, per the Court's ruling, would ever be able to have a completed jury trial.

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE JEOPARDY - 11

Even if the Court were to find that the Government committed "flagrant" misconduct, the Defendant's remedy analysis is flawed. The Defendant argues that the Court should bar a second trial so as to not "afford the government a second chance to prosecute so that it may argue a recast theory of the case better supported by the evidence." *See* ECF No. 182 at 11–12. All of the Government's witnesses testified at trial. None were seriously impeached. All the Government's evidence was admitted at trial. The Government was prepared to proceed to closing arguments. The Government did not want and strongly argued against declaring a mistrial. The Government does not view itself as having "benefitted" from the mistrial – the Government had presented its case as expected and was prepared to argue its case to the jury.

Dismissal is also inappropriate considering the Defendant's theory of misconduct. Per the Defendant, the Government committed misconduct when not offering Hunt immunity. However, as discussed above, the Defendant does not have the right to compel the Government to give Hunt immunity. And the Court recognized that the Government had not intentionally distorted the process to allow the Court to compel the Government to grant immunity. Transcript, Trial Day 4, September 1, 2022, at 45. The Defendant's solution is simply compulsion by another means – to dismiss as proposed by the Defendant would be akin to the Court offering the Government a Hobson's choice: offer immunity or the Court will grant a mistrial and then dismiss the case. This result would be no different from compelling the Government to grant immunity – the Government would be forced to grant immunity to keep the case alive. The Defendant's proposed remedy, therefore, is in direct conflict with settled precedent concerning the Government's prerogative concerning immunity.

Overall, the Defendant has failed to show that the Government committed any "flagrant" misconduct and that, even if the Court were to find misconduct, dismissal

1  with prejudice is an appropriate remedy. The Court therefore has no legal basis to

2  exercise its supervisory powers to dismiss the case.

3  **III.    The Government did not "goad" the mistrial.**

4      The "rule, that a declaration of mistrial at the behest or with the consent of the

5  defendant stands as no obstacle to a new trial, has one 'narrow exception'; the rule

6  does not apply when the mistrial is caused by the misconduct of the prosecutor or

7  judge and that misconduct is motivated by an 'intent . . . to subvert the protections

8  afforded by the Double Jeopardy Clause.'" *United States v. Mondragon*, 741 F.3d

9  1010, 1013 (9th Cir. 2013) (quoting *Kennedy*, 456 U.S. at 673). "'Only where the

10 governmental conduct in question is intended to 'goad' the defendant' into moving for

11 or consenting to a mistrial does double jeopardy bar a second trial." *See id.* (quoting

12 *Kennedy*, 456 U.S. at 676). "The only relevant intent is intent to terminate the

13 trial . . . ." *United States v. Lopez-Avila*, 678 F.3d 955, 962 (9th Cir. 2012) (internal

14 citations omitted). "In other words, in the language of veteran trial lawyers, the

15 Double Jeopardy Clause bars retrial when a prosecutor's misconduct aims to 'burn'

16 the jury . . . ." *Id.*; *see also United States v. Lewis*, 368 F.3d 1102, 1108 (9th Cir.

17 2004) ("This exception prevents prosecutors from sinking a case they knew was

18 doomed to end in an acquittal in the hope of having better luck before a second

19 jury.").

20     First, the Defendant argues that the Government "goaded" the mistrial by not

21 bringing charges against Hunt. *See* ECF No. 182 at 14–15. This is essentially an

22 argument that the Government "goaded" the mistrial *from the moment the Indictment*

23 *was returned*. It would be nonsensical to find, as required by the Defendant's

24 argument, that the Government brought a charge with the *specific intent* to force a

25 mistrial over a year later.

26     Second, the Defendant argues that the Government "goaded" the mistrial by not

27 granting Hunt immunity. *See id.* This argument, similar to the above, would

28 circumvent the Defendant and Court's inability to compel the Government to grant

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE
JEOPARDY - 13

Hunt immunity. To offer the Government the choice between granting immunity or a mistrial followed by dismissal premised on double jeopardy is one and the same with compulsion – the Government would have no choice but to grant immunity or face the dismissal with prejudice of its case.

Critically, the rationale underlying *Kennedy* – that the prosecution should not be allowed to salvage a collapsing case by "goading" a mistrial to illegitimately earn a do-over – is not present here. As noted above, the Government's witnesses had all testified. None had been seriously impeached. All the Government's evidence had been admitted. The Government was prepared for closing argument and strongly objected to the mistrial. While the case has many contested issues for the jury to consider, the Government had no interest in "burning" this jury – the empaneled jury was as equipped as any other to deliberate on and evaluate the evidence and relevant legal principles.

**IV.    The Defendant's unsupported "futility" argument should be rejected.**

The Defendant argues – without a citation to any source of law – that the Court should dismiss the case due to the purported "futility" of a second trial. *See* ECF No. 182 at 15. The Government disagrees that a second trial would end in the same position as the first. First, the Government would not offer any statements by Hunt without a stipulation by the parties or another, independent legal basis. Second, the Defendant's ability to call Hunt as a witness has now been well-litigated – the Defendant's Sixth Amendment right to call witnesses does not overcome Hunt's Fifth Amendment privilege against self-incrimination. *See Paris*, 827 F.2d at 399. With the benefit of extensive briefing – which neither the Court nor the parties had while the Defendant's trial unfolded – the Court may take a different position given its options and the available remedies.

Finally, the Government listened to and has considered the Court's concerns. The Government is undergoing a thorough re-evaluation of the case – concerning both the Defendant and Hunt – and the procedural posture may not be the same during a

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE JEOPARDY - 14

second trial as in the first. At this time, the Government is continuing to assess its charging strategy and options with regards to the posture of the case on retrial.

## CONCLUSION

The Defendant has failed to demonstrate that (1) a basis exists for the Court to exercise its supervisory powers to dismiss the case; (2) that the Government "goaded" the mistrial; and (3) that a second trial would necessarily be futile. Accordingly, the Defendant's Motion should be denied.

Dated:   October 7, 2022.

Vanessa R. Waldref
United States Attorney

*s/Michael J. Ellis*
Michael J. Ellis
Assistant United States Attorney

*s/Timothy J. Ohms*
Timothy J. Ohms
Assistant United States Attorney

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on October 7, 2022, I electronically filed the foregoing with

3   the Clerk of the Court using the CM/ECF System which will send notification of such

4   filing to the following: Richard A. Smith; Douglas E. McKinley, Jr.

5

6

7                                        *s/ Michael J. Ellis*
                                         Michael J. Ellis
8                                        Assistant United States Attorney

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S RESPONSE TO MOTION TO DISMISS RE DOUBLE
JEOPARDY - 16